Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers Compensation Act.
2. The employer-employee relationship existed between plaintiff-employee and defendant-employer at the time of the alleged occupational disease.
3. Virginia Reciprocal Insurance was the compensation carrier on the risk.
4. Exhibits stipulated into evidence include: Stipulated Exhibit #1-Plaintiffs medical records, 200 pages.
5. The Deputy Commissioner took judicial notice of the parties prior clincher agreement dated 24 October 1990 and Industrial Commission order approving same, filed 21 January 1991.
 ***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the evidentiary hearing, plaintiff was forty-eight years old and had worked for defendant-employer since 1978 as a respiratory technician. Plaintiff worked in that capacity until 1988, when she accepted a newly-created position cleaning respiratory equipment. Plaintiff had no history of asthma, allergies, or recurrent sinus infections prior to working in the cleaning room. Plaintiffs only history of headaches occurred over ten years earlier, when she had three or four headaches during a period of unusual emotional stress.
2. Plaintiffs job with defendant-employer in the cleaning room involved disassembling and cleaning reusable respiratory equipment with Sporocidin, a solution containing Gluteraldehyde and Phenol. The odor of the Sporocidin permeated the cleaning room, where plaintiff spent four to six hours a day, five days a week. Shortly after going to work in the cleaning room, plaintiff began to notice shortness of breath with exertion, then chest pains, headaches, and recurrent sinus infections. Her voice became very hoarse and her throat was continuously sore. As her symptoms worsened, plaintiff requested pulmonary function studies, which showed a marked decrease in lung capacity. Plaintiff went to see her family physician, who referred her on to Dr. Bell and Dr. Stone. When plaintiffs doctors took her out of work for a few weeks, she felt better, but her symptoms recurred and permanently worsened when she returned to the cleaning room and was re-exposed to the Sporocidin. Because of these ongoing health problems, plaintiff left her job with defendant-employer in June 1989 and filed an occupational disease claim.
3. Since leaving defendant-employer, plaintiff has continued to require medical treatment for recurrent sinus infections, symptoms of asthma and chronic rhinitis, and headaches. While she was working in the cleaning room, plaintiff noticed a pattern in her symptoms. Her symptoms would begin with fatigue and difficulty breathing, followed by a severe headache. When she lived in North Carolina, plaintiff sought medical treatment for these conditions from Dr. MacDonald, Dr. Bell, Dr. Stone, and Dr. Jreisat. Before the introduction of Imitrex for migraines, plaintiff sought treatment on approximately ten occasions at the Craven Regional Emergency Room, where she would typically be administered a shot of Demerol and Phenergan. More recently, plaintiff has taken Imitrex and over-the-counter Motrin for control of her headache pain, with fairly good results.
4. When plaintiff moved to Virginia, she asked the workers compensation carrier for a referral to a doctor there and was told to ask her attorney. Since moving to Virginia, plaintiff has been under the care of Dr. Ignacio for her asthma, sinus problems, and headaches.
5. In October 1990, plaintiff and defendants entered into a clincher agreement for plaintiffs claim for alleged occupational disease due to exposure to Sporocidin at work. In addition to a lump sum payment of $16,000.00, the clincher provided for payment of future "medical expenses arising out of the occupational disease alleged to be suffered by employee. At the time of the clincher agreement, plaintiff had been receiving treatment for headaches which she attributed to exposure to chemicals at work since at least June 1989. The clincher agreement did not exclude headaches or migraines from the conditions which would be covered for future medical payments.
6. For a time, defendants did pay all medical expenses incurred by plaintiff for treatment of her asthma, headaches, allergic rhinitis, and sinus infections. However, shortly after approval of the clincher, defendants discontinued paying for plaintiffs treatment with Dr. Stone and Dr. Bell. Defendants thereafter refused to pay for treatment with Dr. Jreisat and discontinued paying for plaintiffs migraine and sinus infection medications. Defendants also did not pay the medical expenses plaintiff incurred for treatment at Craven Regional Emergency Room or those she incurred treating with Dr. Ignacio in Virginia. After approval of the clincher, defendants have paid for plaintiffs asthma medications only.
7. There is a probable causal relationship between plaintiffs Glutaraldehyde-induced upper and lower respiratory problems and the headaches that she has experienced since she went to work for defendant-employer in the cleaning room. Plaintiffs treatment for headaches, asthma, and chronic sinusitis, including the doctors visits and medications, as reflected in the stipulated medical records, was causally related to the alleged occupational disease and was reasonably necessary to treat conditions related to the alleged occupational disease. It is probable that these conditions will persist for the remainder of plaintiffs lifetime.
8. Defendants defense of the hearing before the deputy commissioner after Dr. Jreisats deposition in November 1998 was unreasonable and based in unfounded litigiousness. No evidence was submitted to contradict Dr. Jreisats opinion, which was legally sufficient to support plaintiffs claim.
9. A reasonable attorneys fee for plaintiffs counsel is $3,000.00.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiffs medical treatment for headaches, asthma, and sinusitis has been and continues to be causally related to her alleged occupational disease, and, therefore, defendants are obligated to pay for this treatment under the clincher agreement dated 24 October 1990. In addition, the treatment and medication prescribed have been reasonably necessary to give relief of conditions causally related to the alleged occupational disease. In accordance with the prior Order of the Commission approving the clincher agreement, defendants are obligated to pay all medical expenses incurred by plaintiff for treatment of these conditions from the date of last payment and continuing for the remainder of plaintiffs life. In addition, defendants are obligated to reimburse plaintiff for any out of pocket and/or copay payments for medical expenses, including payments for doctors visits, medications, including but not limited to Imitrex. G.S. 97-25.
2. Plaintiff is entitled to reasonable attorneys fees in the amount of $3,000.00. G.S. 97-88.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff for treatment of her asthma, headaches, and sinus problems, from the date of the last payment and continuing for plaintiffs lifetime.
2. Defendants shall reimburse plaintiffs out-of- pocket expenses incurred for treatment of her headaches, asthma, and sinus problems.
3. Defendants shall pay the costs.
4. Defendants shall pay directly to plaintiffs attorney the sum of $3,000.00.
 S/________________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_________________________ BERNADINE S. BALLANCE COMMISSIONER
S/_________________________ DIANNE C. SELLERS COMMISSIONER